UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 16-MJ-02861-AOR

IN RE SEALED
CRIMINAL COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
WALTER M. NORKIN
Assistant United States Attorney
Southern District of Florida
Court ID No. A5502189
99 Northeast 4th Street, 6th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9409
E-mail: walter.norkin@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>WILTER BLANCO<br><br>*Defendant(s)* | Case No. 16-MJ-02861-AOR |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  January 1999 and June 22, 2016  in the county of  Miami-Dade  in the  Southern  District of  Florida and elsewhere , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 959, 963 | The defendant, together with others, did knowingly and willfully combine, conspire, confederate and agree with other persons to distribute a controlled substance in Schedule II, knowing that such controlled substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 963, and that the controlled substance involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 963 |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

Peter Maynard, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  06/22/2016 

*Judge's signature*

City and state:  Miami, Florida   U.S. MAGISTRATE JUDGE ALICIA M. OTAZO-REYES
*Printed name and title*

## AFFIDAVIT

I, Peter J. Maynard, a Special Agent with the U.S. Drug Enforcement Administration ("DEA"), being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the DEA Miami Field Division Office, and have been so assigned for approximately six years. Previously, I was employed as a Police Officer with the Norwich, Connecticut, Police Department for six years

2. As a DEA Special Agent, I have received training in specialized controlled substances investigative matters including, but not limited to, drug interdiction, drug detection, money laundering techniques, locating hidden assets derived from drug trafficking, and the investigation of individuals involved in smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. I have participated in numerous narcotics investigations involving physical and electronic surveillance; the interception and analysis of wire and oral communications; execution of search and arrest warrants; evidence handling; undercover operations; the control and administration of confidential sources; international drug importations; and domestic drug distribution organizations. I have participated in the arrest and subsequent prosecution of numerous drug traffickers. I have spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, and practices that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods of investigating and dismantling drug trafficking organizations. Based on my training, personal experience, and participation in criminal investigations, I have become familiar with the methods and techniques used by individuals engaged in drug trafficking, including the support and assistance that drug trafficking organizations require to conduct their illegal activities.

3. I submit this affidavit in support of a criminal complaint charging that between on or about January 1, 1999, and on or about June 22, 2016, Wilter BLANCO, together with others,

did knowingly and willfully combine, conspire, confederate and agree with other persons to distribute a controlled substance in Schedule II, knowing that such controlled substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 963, and that the controlled substance involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 963 and 960(b)(1)(A).

4. The statements contained in this affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials involved in this investigation, interviews of witnesses and co-conspirators, and information obtained from reports and examinations of seized evidence. I have not included in this affidavit each and every fact known to me. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint against BLANCO for violating Title 21, United States Code, Sections 959 and 963.

5. In 2015, law enforcement arrested Co-Conspirator 1 ("CC1"), a Honduran national who was detained while transporting cocaine. CC1 was charged in a District other than the Southern District of Florida with violating U.S. narcotics laws. CC1 agreed to cooperate in an effort to secure a more lenient sentence in that District and has made statements to law enforcement that have been corroborated by independent evidence.

6. CC1 stated, in sum and substance, that in early 2015 he/she assisted in the transportation and distribution of over 2,000 kilograms of cocaine and that he/she was paid for his/her involvement in the shipments. Specifically, CC1 stated, in sum and substance, that he/she and other co-conspirators would meet vessels coming from Colombia, retrieve cocaine from those Colombian vessels, and off load the cocaine on shore in Honduras. CC1 further stated, in sum and

2

substance, in early 2015, he/she engaged in this activity for two shipments belonging to BLANCO and that BLANCO was present on shore in Honduras both times when CC1 successfully off loaded the cocaine. CC1 added, in sum and substance, that BLANCO had armed men supervising the process and that the cocaine, after being offloaded, was transported to a property that BLANCO controlled.

7. Based on my training, experience and knowledge of other investigations, I know that when large quantities of narcotics are transported north from Colombia (such as to a location in Honduras), at least part of the narcotics from those shipments is eventually imported into and sold in the U.S. There are two reasons for this. First, the U.S. is the most profitable market for narcotics and thus the most likely way for a narcotics trafficker to earn a profit given the expenses of clandestinely transporting such a large load north is to sell at least some portion of it for the highest possible price, which is the price in the U.S. Second, the U.S., which has a much larger population than those of Central American countries, is the only country north of Colombia that would have a demand for narcotics sufficient to absorb such a large quantity of narcotics. My belief that at least part of the narcotics from large shipments that move north from Colombia are imported in the U.S. is corroborated by evidence showing that markings from kilograms of cocaine seized in Central America are found on kilograms of cocaine seized in the U.S.

8. In spring of 2016, law enforcement raided a hidden cocaine laboratory and processing location in Honduras and recovered 235 kilograms of cocaine, along with scales, chemicals, and presses. The kilograms, which were packaged in bricks, had an alpha-numeric mark stamped onto each brick. Those same markings appeared on kilograms of cocaine that were seized in the U.S.

9. Sometime in early 2016, knowing that U.S. law enforcement was pursuing charges against him, BLANCO established a line of communication with DEA agents stationed in Central

America through Blackberry Messenger ("BBM"), a type of instant messenger service available to users of Blackberry mobile telephone devices, in an effort to negotiate a potential surrender to the agents. These communications between BLANCO and the DEA agents were recorded and stored on DEA Blackberry mobile phones. In a communication from on or about April 14, 2016, BLANCO admitted, in sum and substance, that the raided laboratory discussed above belonged to him.

10. In a BBM conversation on or about April 28, 2016, BLANCO admitted, in sum and substance, that two ships seized by the Honduran navy under suspicion of transporting narcotics belong to him.

11. In a BBM conversation on or about May 3, 2016, BLANCO stated, in sum and substance, that he was still participating in narcotics distribution and was utilizing small airplanes. BLANCO further stated, in sum and substance, that the picture corresponding to his BBM profile, which picture had a small plane with kilograms of cocaine stacked next to it, was a plane that had landed on his property in Honduras a few days before.

12. Agents have also corroborated BLANCO's involvement in narcotics trafficking through interviews with other cooperating witnesses and co-conspirators, including Co-Conspirator 2 ("CC2"). CC-2 was the focus of an investigation by Miami DEA agents and he/she agreed to cooperate in an effort to secure a more lenient sentence in the Southern District of Florida. Like CC1, CC2 has made statements to law enforcement that have been corroborated by independent evidence. During a debriefing with agents, CC2 stated, in sum and substance, that he/she met in Central America with BLANCO in spring 2014 to discuss coordination of narcotics shipments. Specifically, CC2 stated, in sum and substance, that he/she and BLANCO discussed receiving shipments in Costa Rica of cocaine that was being sent from Colombia and their plan to send the cocaine further north after it was received in Costa Rica.

4

13. CC2 also stated, in sum and substance, that he knew that at least some portion of the cocaine that he and co-conspirators, including BLANCO, discussed sending north would end up being imported into the U.S. and that all of the co-conspirators, including BLANCO, had that understanding. CC2 explained, in sum and substance, that although the co-conspirators never specifically discussed importing cocaine into the U.S., given the large quantity of the cocaine that was being transported and the costs of secretly transporting such cocaine loads north past Central America, even without explicitly discussing importing the cocaine into the U.S., all the co-conspirators, including BLANCO, either had to have known or should have known the same way that CC2 knew that at least a portion of the loads would be imported into the U.S.

14. Based on the facts and information set forth in this affidavit, your affiant submits that there is probable cause to believe that defendant Wilter BLANCO, together with others, did knowingly and willfully combine, conspire, confederate and agree with other persons to distribute a controlled substance in Schedule II, knowing that such controlled substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 963, and that the controlled substance involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 963 and 960(b)(1)(A).

**FURTHER YOUR AFFIANT SAYETH NAUGHT**

PETER J. MAYNARD, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATIONS

Sworn to and subscribed before me this
22 day of June, 2016

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 16-MJ-02861-AOR

## BOND RECOMMENDATION

DEFENDANT: WILTER BLANCO,

__Detention__
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: WALTER M. NORKIN

Last Known Address: _____
Honduras

What Facility:

Agent(s):     PETER MAYNARD, DEA
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (OTHER)